30878.   IRWIN *v.* McCALL.

DECIDED JULY 12, 1945.

*Brandon, Malthews, Long & Nall,* for plaintiff in error.
*G. Eugene Ivey,* contra.

SUTTON, P. J. (After stating the foregoing facts.) The emergency price control act of 1942, 50 U. S. C. A. Appendix, provides in part: "§ 901 (a) It is hereby declared to be in the interest of the national defense and security and necessary to the effective prosecution of the present war, and the purposes of this act are, to stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents; . . § 902 (a) Whenever in the judgment of the price administrator (provided for in section 201) [section 921 of this appendix] the price or prices of a commodity or commodities have risen or threaten to rise to an extent or in a manner inconsistent with the purposes of this act [sections 901-946 of this appendix], he may by regulation or order establish such maximum price or maximum prices as in his judgment will be generally fair and equitable and will effectuate the purposes of this act [sections 901-946 of this appendix]; . . (b) Whenever in the judgment of the administrator such action is nec-

essary or proper in order to effectuate the purposes of this act [sections 901-946 of this appendix], he shall issue a declaration setting forth the necessity for, and recommendations with reference to, the stabilization or reduction of rents for any defense-area housing accommodations within a particular defense-rental area. . . So far as practicable, in establishing any maximum rent for any defense-area housing accommodations, the administrator shall ascertain and give due consideration to the rents prevailing for such accommodations, or comparable accommodations; . . § 921 (a) There is hereby created an Office of Price Administration, which shall be under the direction of a price administrator (referred to in this act as the 'administrator'). § 922 (a) The administrator is authorized to make such studies and investigations, to conduct such hearings, and to obtain such information as he deems necessary or proper to assist him in prescribing any regulation or order under this act [sections 901-946 of this appendix], or in the administration and enforcement of this act [sections 901-946 of this appendix] and regulations, orders, and price schedules thereunder."

The price administrator (O. P. A.) issued certain regulations, as authorized by the emergency price control act, applicable to and affecting defense-rental areas, one of which is the Atlanta defense-rental area, including Clayton, Cobb, DeKalb, and Fulton Counties, and these regulations were in effect at the time the transactions in the present case are alleged to have occurred. Rent regulation for housing, Document No. 44936, sec. 1 (a) provides: "Housing and defense-rental areas to which this regulation applies. This regulation applies to all housing accommodations within each of the defense-rental areas and each of the portions of a defense-rental area (each of which is referred to hereinafter in this regulation as the 'defense-rental area'), which are listed in Schedule A of this regulation, except as provided in paragraph (b) of this section;" and paragraph (b) of sec. 1 provides: "This regulation does not apply to the following: . . (4) Structures in which more than 25 rooms are rented or offered for rent. Entire structures or premises wherein more than 25 rooms are rented or offered for rent by any lessee, sublessee, or other tenant of such entire structure or premises: provided, that this regulation does apply to entire structures or premises wherein 25 or less rooms are rented

or offered for rent by any lessee, sublessee, or other tenant of such entire structure or premises, whether or not used by the lessee, sublessee, or other tenant as a hotel or rooming house." Sec. 4 (e) relates to maximum rents and provides, in part, that if a landlord subject to that regulation fails to file a registration statement within 30 days after first renting, "the rent received for any rental period commencing on or after the date of the first renting . . shall be received subject to refund to the tenant of any amount in excess of the maximum rent which may later be fixed by an order under section 5 (c) (1)." Sec. 5 (c) (1) provides: "The administrator at any time, on his own initiative, or on application of the tenant, may order a decrease of the maximum rent otherwise allowable only on the grounds that: (1) rent higher than rents generally prevailing. The maximum rent for housing accommodations under paragraph (c), (d), (e), (g), or (j) of section 4 is higher than the rent generally prevailing in the defense-rental area for comparable housing accommodations on the maximum rent date."

On November 1, 1943, Irwin, as landlord, rented and leased to Mrs. McCall property known as the Hangar Hotel, 1011 Virginia Avenue, Hapeville, Fulton County, Georgia, and this lease covered the completed rooms in said building, at that time 500 to 512, inclusive, there being 13 rooms at a rental of $400 per month. This was the first time that property had been rented, and the maximum rent was thereby established at $400 per month under section 4 (e) of the rent regulation, but subject to be decreased as provided by section 5 (c) (1), above referred to. And, according to the allegations of the petition, the Office of Price Administration of the Atlanta rental area, after an investigation of the premises and the rents charged thereon, passed an order on August 26, 1944, requiring the landlord to reduce the rent on the 13 rooms from $400 to $169 per month, effective from November 1, 1943, to January 29, 1944. It appears from the petition that on January 29, 1944, 8 more rooms were completed in this building, and, on that date, the 8 additional rooms were leased by the defendant to the plaintiff at $200 per month. On August 28, 1944, the Office of Price Administration, in the same manner as above stated, reduced the rent on the 8 rooms and 13 rooms (a 21-room unit) from $600 to $273 per month, effective from January 29, 1944, to February

28, 1944. The last mentioned date, February 28, 1944, is the date on which the third lease for 5 more rooms was entered into between the parties, but that lease is not involved in this litigation. This suit seeks to recover the difference between the amount of rents charged and collected by the landlord from the tenant on the first two leases, one for 13 rooms and the other for 8 rooms, and the amount of rents fixed thereon by the orders of the price administrator.

The rent regulation for housing, above referred to, applies to "all housing accommodations," except as provided therein, and among the exceptions are "entire structures or premises wherein more than 25 rooms are rented or offered for rent," etc.; but it will be seen that this regulation states that it "does apply to entire structures or premises wherein 25 or less rooms are rented or offered for rent," etc.

The plaintiff in error contends that under the rent regulations for hotels and rooming houses, as contained in Document No. 44935, issued by the price administrator, the amount of rent as fixed and agreed to by the parties in the lease contracts was not subject to be changed and reduced by the price administrator. Section 1 (a) of this regulation for hotels provides: "This regulation applies to all rooms in hotels and rooming houses within each of the defense-rental areas and each of the portions of a defense-rental area . . except as provided in paragraph (b) of this section." Paragraph (b) (4) provides: This regulation does not apply to the following: "Entire structures or premises used as hotels or rooming houses, as distinguished from the rooms within such hotels or rooming houses." But section 13 (a) (13) of this regulation provides: " 'Hotel' means any establishment generally recognized as such in its community, containing more than 50 rooms and used predominantly for transient occupancy."

The plaintiff in error further contends that, if the two lease contracts are subject to regulation by the price administrator, the orders involved in this case should not receive a retroactive construction. We do not think that either of these contentions can be sustained. We are of the opinion that under the facts alleged in the petition the rent regulation for housing accommodations issued by the price administrator under the emergency price control

act of 1942, is applicable and controlling here, instead of the rent regulation for hotels, as contended by the plaintiff in error. The first lease covered 13 completed rooms in the structure, and the second lease covered 8 additional rooms, both leases together covering only 21 rooms. The rent regulation for housing states that it does apply to entire structures or premises wherein 25 or less rooms are rented, but does not apply to entire structures wherein more than 25 rooms are rented, Section 13 (a) (13), Document No. 44936, rent regulations for housing, says that "housing accommodations" means any building, structure, or part thereof. Under the allegations of the petition, this was a new building, and the lease contracts involved were for the first renting. Under section 4 (e) and section 5 (c) (1), which are set out above, the price administrator was authorized in making the orders issued by him on August 26 and August 28, 1944, decreasing the rents in question, effective from the date or dates of the first renting. Accordingly, said orders decreasing the rents in question were not void in that they were retroactive in effect.

The emergency price control legislation has been referred to as stream-lined law. The purpose of the act, among other things, was to stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents. The statute has impact on persons through the regulations issued by the price administrator. The regulations are in effect part of the act, if valid, and they have the force of law. It is not deemed necessary for the purpose of a decision of this case, which is here on an exception to the overruling of a general demurrer to the plaintiff's petition, to deal more extensively with the act or rent regulations issued by the price administrator. The defendant's liability in this action arises by virtue of the act and the regulations adopted by the authority thereof, and the rights of the parties are controlled thereby.

The petition was good as against the general demurrer, and the court did not err in overruling the same.

*Judgment affirmed. Felton and Parker, JJ., concur.*